```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------
In re
            TAREK F.  AL-NAJI,                    12-12266 CLB
            aka TAREK F.  ALNAJI,


                              Debtor        DECISION & ORDER
-------------------------------------------------
MOHAMMAD O.  AL-NAJI,

                              Plaintiff

       v.                                   AP 12-1139 CLB

TAREK F.  AL-NAJI,

                              Defendant
-------------------------------------------------
```

                    Aaron Dautch Sternberg & Lawson, LLP
                    Francis P.  Weimer, Esq., of counsel
                    730 Convention Tower
                    Buffalo, New York 14202
                    Attorneys for the Plaintiff

                    Robert R.  Radel, Esq.
                    88 West Utica Street
                    Buffalo, New York 14209
                    Attorney for the Defendant

Bucki, U.S.B.J.

  Officers, directors and controlling shareholders owe fiduciary duties not only to the corporation, but to its shareholders and at least in instances of insolvency, to creditors.  As a shareholder and creditor, the plaintiff in this action asserts that his claim against a corporate officer is rendered nondischargeable as a debt arising from defalcation while acting in a fiduciary capacity.  A key issue is whether the plaintiff can recover personally on a claim that is derivative in character.

  Since January of 2004, Tarek Al-Naji has been the president and largest shareholder of United States Wholesale Sign Co., Inc., a corporation that was principally engaged in the manufacture of commercial signs.  Soon thereafter, on behalf of the corporation, Tarek Al-Naji employed various of his relatives and gave them an

opportunity to purchase stock at a price of $1,000 per share. In particular, a cousin by the name of Mohammad Al-Naji acquired an 18% interest in the corporation. Eventually, after the completion of various sales to other relatives, the ownership interest of Tarek Al-Naji was reduced to 28% of the issued stock. Nonetheless, he remained the largest shareholder and continued to serve as corporate president.

Federal income tax returns show that United States Wholesale Sign Co., Inc., had incurred net operating losses in 2008, 2009 and 2011. As a consequence of its financial problems, the corporation was unable to pay a portion of the wages due to the six stockholders who worked for the business. When the company failed to satisfy his demand for payment of back wages, Mohammad Al-Naji quit his job on August 5, 2011. Meanwhile, continuing losses forced the company to discontinue regular operations in September 2011. Pursuant to the terms of a security agreement, KeyBank National Association took possession of the company's equipment and other collateral. On January 23, 2012, these assets were then sold at a secured creditor's sale to Innovision-Led, Inc., for $30,000.

Although incorporation will generally insulate shareholders from the obligations of a business, Tarek Al-Naji encountered at least two significant areas of personal exposure to creditors of United States Wholesale Sign Co., Inc. On January 10, 2012, Mohammad Al-Naji obtained a judgment against both Tarek Al-Naji and the corporation for damages arising under New York Labor Law § 198(1-a) for the willful non-payment of wages. Because the defendants took no appeal, Tarek Al-Naji cannot here challenge the legitimacy of that judgment or its determination of liability in the amount of $83,671.16, together with interest from the date of the judgment at the statutory rate. Additionally, Tarek Al-Naji had personally guaranteed the corporate obligation to KeyBank. On February 27, 2012, KeyBank secured a deficiency judgment against Tarek Al-Naji and others for the sum of $76,558.01.

Maison Al-Naji is the wife of Tarek Al-Naji. Even as KeyBank was initiating the repossession of its collateral, Tarek and Maison Al-Naji took steps to derive continuing income from the business of sign manufacture. On September 11, 2011, Maison Al-Naji executed a business certificate which declared that she would thereafter transact business under the name of U.S. Wholesale Sign. Despite the similarity in the name of this new enterprise with that of the corporate entity, the business certificate was presented and accepted for filing with the Erie County Clerk on November 14, 2011. Ostensibly working for his spouse, Tarek Al-Naji continued to service some of the former customers of United States Wholesale Sign Co., Inc. These efforts enabled Maison Al-Naji to accumulate at least $20,000, a sum which she then used to purchase a portion of the equipment that KeyBank had sold to Innovision-Led, Inc., at the secured creditor's sale. By the early spring of 2012, as an employee of his wife's business, Tarek Al-Naji was again using this equipment to manufacture signs.

On July 19, 2012, Tarek Al-Naji filed an individual petition for relief under Chapter 7 of the Bankruptcy Code. In schedules filed with that petition, Tarek Al-Naji acknowledged liabilities of more than $882,000, a sum which included the judgments of both Mohammad Al-Naji and KeyBank. Mohammad Al-Naji responded by commencing the present adversary proceeding which seeks in the alternative either to deny a discharge under 11 U.S.C. § 727 or to determine the nondischargeability of a claim under 11 U.S.C. § 523. Tarek Al-Naji then filed a timely answer. The dispute ultimately became the subject of a trial that extended over two days and included the testimony of four witnesses.

**Denial of Discharge under 11 U.S.C. § 727**

Section 727 of the Bankruptcy Code states that a debtor in Chapter 7 shall receive a discharge except in any of twelve circumstances that the statute delineates. In his complaint, Mohammad Al-Naji asks that the court deny a discharge by reason of the limitations in 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727(a)(4), and 727(a)(5). As

developed at trial, however, the creditor's most cogent argument arises under section 727(a)(4), which provides that the Court shall not grant a discharge whenever "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account." Mohammad Al-Naji contends that the debtor made a false oath when he filed schedules and a Statement of Financial Affairs that failed to disclose at least three items of information: the amount of profit or loss that the debtor's wife realized from the operation of businesses in her name; the fact that the debtor had transferred various assets to his wife; and the amount that various relatives still owe from their purchase of stock in United States Wholesale Sign Co., Inc.

Objecting creditors carry the burden to prove a basis for the denial of discharge under section 727. With respect to section 727(a)(4), the creditor must show that the debtor acted "knowingly and fraudulently" in his failure to disclose material information. Although Maison Al-Naji had become the owner of a new sign-making business, the plaintiff offered no evidence of any profitability in excess of the earnings that Tarek Al-Naji reported on his own statement of income. Nor did the plaintiff offer proof regarding the value of transferred assets, if any. At the time of bankruptcy filing, family members had defaulted for at least five years in payment of consideration due for stock in United States Wholesale Sign Co., Inc. Meanwhile, this corporation had ceased regular operations. These factors provide at least some articulable basis to believe that the obligations of relatives were uncollectible. For all of these reasons, the court finds that the plaintiff failed to prove any material omission of information reportable on the schedules and Statement of Financial Affairs. Consistent with this conclusion is the fact that the case trustee filed a report of no distribution even though he had received a copy of the plaintiff's complaint. Further, the evidence was insufficient to establish that the debtor acted fraudulently in his bankruptcy submissions. Fraud requires not only a false statement, but also an intent to deceive. *Field v. Mans*, 516 U.S. 59 (1995), *In re Lokotnicki*, 232 B.R. 583 (Bankr. W.D.N.Y. 1999). In the Statement of Financial Affairs, the debtor disclosed his prior involvement with various sign-making ventures, including

United States Wholesale Sign Co., Inc.  Sufficing to suggest areas of inquiry by the trustee, this information indicates also an absence of any fraudulent intent to deceive.

The court has considered all of the plaintiff's other arguments for a denial of discharge under the various subdivisions of 11 U.S.C. § 727.  Upon a review of the evidence presented at trial, we find that Mohammad Al-Naji has failed to sustain his burden of proof with regard to these causes of action.  Accordingly, the debtor's right to a discharge is preserved.

### Nondischargeability under 11 U.S.C. § 523

Mohammad Al-Naji contends that even if the debtor is entitled to a discharge, the outstanding judgment is nondischargeable by reason of 11 U.S.C. § 523(a)(2), (4) and (6).  Based on the evidence presented at trial, the court discerns no basis for a finding of nondischargeability under subdivisions (a)(2) and (a)(6).  However, subdivision (a)(4) will preserve a portion of the claim.

Section 523(a)(2) states in relevant part that an order of discharge "does not discharge an individual debtor from any debt . . . for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained, by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  The concepts of false pretenses, false representation and actual fraud are distinct but related in that each requires a demonstration of some form of false communication upon which a creditor justifiably relied.  *See Field v. Mans*, 516 U.S. 59, 70-72 (1995).  As a shareholder of United States Wholesale Sign Co., Inc., Mohammad Al-Naji received tax statements indicating that the corporation had incurred significant losses.  Thus, he had reason to anticipate the non-payment of wages.  Meanwhile, the record fails to show any other false representation that might have justified a contrary conclusion.  Having identified no misrepresentation, the plaintiff fails to establish grounds for nondischargeability under 11 U.S.C. § 523(a)(2).

Pursuant to 11 U.S.C. § 523(a)(6), the order of discharge will not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." On January 10, 2012, Mohammad Al-Naji secured a judgment against the debtor for $83,671.16. The text of that judgment recites that this sum represents damages "for defendants' wilful failure to pay wages pursuant to [New York] Labor Law § 198(1-a)," together with attorney's fees and disbursements. The state court's finding of wilfulness is binding in the present proceeding. However, for nondischargeability, section 523(a)(6) requires an injury that is not only wilful, but also malicious. Here, the evidence at trial established the insolvency of United States Wholesale Sign Co., Inc. Although Tarek Al-Naji may have wilfully chosen to pay other creditors to the detriment of his cousin, the corporation's lack of resources provides a non-malicious explanation for the failure to make payment. When resources are insufficient to allow payment of all creditors, the non-payment of any particular creditor will serve as evidence not of malice, but of the reality that someone will be left unpaid. In such circumstances, a corporation might reasonably defer the payment of insider claims. By a preponderance of evidence, therefore, the creditor fails to establish the necessary intent for a determination of non-dischargeability under 11 U.S.C. § 523(a)(6).

A different result follows from 11 U.S.C. § 523(a)(4). This section states that an order of discharge will not discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Although they may refer to generally similar conduct, the concepts of fraud, defalcation, embezzlement and larceny are distinct. In the present instance, defalcation presents the most appropriate basis for a finding of nondischargeability. Defalcation "can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity." *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1760 (2013). Nonetheless, defalcation "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase" of section 523(a)(4). *Id.* at 1757. The Supreme Court has described this "state of mind

as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757.

   Corporate officers and directors are fiduciaries, and as such, owe to the corporation, to shareholders, and to creditors a duty of good faith and fair dealing. Both statutes and case law confirm these obligations. Because United States Wholesale Sign Co., Inc., is a New York corporation doing business only in this state, we appropriately look to New York law for the controlling standard of fidelity. New York's Business Corporation Law provides that "[a] director shall perform his duties as a director . . . in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." N.Y. BUS. CORP. LAW § 717 (McKinney 2003). In *Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 568-69 (1984), the New York Court of Appeals described the broad scope of fiduciary responsibility that attaches to corporate officers and directors:

> "Because the power to manage the affairs of a corporation is vested in the directors and majority shareholders, they are cast in the fiduciary role of 'guardians of the corporate welfare.' In this position of trust, they have an obligation to all shareholders to adhere to fiduciary standards of conduct and to exercise their responsibilities in good faith when undertaking any corporate action. . . . Actions that may accord with statutory requirements are still subject to the limitation that such conduct may not be for the aggrandizement or undue advantage of the fiduciary to the exclusion or detriment of the stockholders."

(citations deleted). A similar duty inures also to the benefit of creditors. *Pepper v. Litton*, 308 U.S. 295, 307 (1989). As we have previously observed, "officers may not divert unto themselves the opportunities that should fairly inure to the benefit of the corporation's entire community of interests, which for an insolvent corporation must include every creditor." *Wallach v. Buchheit (In re Northstar Development Corp.)*, 465 B.R. 6, 17 (Bankr. W.D.N.Y. 2012).

   Tarek Al-Naji served as an officer and director of United States Wholesale Sign Co., Inc., and continued in that capacity during a time of corporate insolvency.

Thus, he owed to Mohammad Al-Naji the full range of fiduciary obligations that New York law imposes for the benefit of the corporation's creditors and shareholders. In particular, Tarek Al-Naji could not appropriate corporate resources for his personal use. Rather, on behalf of the corporation, he was obliged to commit those resources first to the satisfaction of corporate obligations and thereafter to the benefit of shareholders without unfair discrimination. After Key Bank had repossessed the corporation's equipment and other collateral, Tarek Al-Naji continued to use corporate resources to generate income. He relied upon the company's customer list and accepted orders on the same telephone that those customers had previously used to communicate with United States Wholesale Sign Co., Inc. Though limited, these orders generated a net return of at least $20,000, which Tarek Al-Naji then used to fund the purchase of equipment in the name of his wife, Maison Al-Naji. Intangibles like customer lists and a telephone number are as much a corporate asset as equipment and inventory. Income derived from their use is similarly a corporate asset. By using such income to purchase property in the name of his wife, Tarek Al-Naji breached his fiduciary obligations to the corporation and to its creditors and shareholders.

For purposes of 11 U.S.C. § 523(a)(4), defalcation requires either knowledge of, or gross recklessness with regard to, the improper nature of activity that constitutes a breach of fiduciary duty. Here, from the start of his business activity, Tarek Al-Naji had elected to operate under a corporate form. He then sold stock to various friends and relatives, including his cousin, Mohammad Al-Naji. Only a state of gross recklessness would allow a promoter of stock sales to presume the absence of a fiduciary obligation to fellow shareholders. Moreover, by establishing a new business in his wife's name, Tarek Al-Naji demonstrated an appreciation for burdens that would have followed from a continuation of corporate activity. By his actions and testimony, Tarek Al-Naji showed a level of sophistication sufficient to allow this court to conclude, by a preponderance of the evidence, that the defendant knowingly breached his fiduciary obligations as an officer and director.

The breach of fiduciary obligations occurred not by reason of any default in payment of a particular debt, but when Tarek Al-Naji utilized corporate resources for personal gain.  Consequently, Mohammad Al-Naji overreaches when he seeks a declaration that his state judgment for unpaid wages is necessarily preserved.  Rather, two considerations will determine the amount of nondischargeable debt.  First, we must quantify the extent of any defalcation.  Second, we must determine that portion of the total defalcation to which the plaintiff may assert a personal claim.

The plaintiff carries the burden to prove the amount of damages resulting from acts of defalcation.  The evidence at trial established that Tarek Al-Naji used corporate assets to generate $20,000 for himself or his wife.  Tarek and Maison Al-Naji then used these commandeered funds to acquire some of the equipment that Key Bank had seized from United States Wholesale Sign Co., Inc.  The plaintiff contends that in starting a new enterprise, Tarek and Maison appropriated a corporate opportunity. Nonetheless, two factors preclude an enhancement of damages in excess of the $20,000 that Tarek Al-Naji derived directly from corporate assets.  First, United States Wholesale Sign Co., Inc., lacked the ability to renew manufacturing activity.  With substantial liability to its secured creditor on a deficiency claim, the sign company was unable to generate capital sufficient both to address its preexisting obligations and to finance operations.  Because United States Wholesale Sign Co., Inc., possessed no realistic prospect of rehabilitation, Tarek Al-Naji has no additional liability for usurpation of corporate opportunity.  *See Hauben v. Morris*, 255 A.D. 35 (1st Dep't 1938), *judgment aff'd*, 281 N.Y. 652 (1939).  Second, the plaintiff has presented no proof regarding the value of the business now operated in the name of Maison Al-Naji.  Without evidence of such value, the court lacks any basis for a finding of enhanced damages resulting from the debtor's misappropriation.  Accordingly, the sum of $20,000 constitutes the only proven amount of damages resulting from the defalcation that Tarek Al-Naji committed while serving as a corporate officer.

In most circumstances, a misappropriation of corporate resources will establish the basis of a derivative claim that inures to the benefit of all creditors and shareholders:

> "It is the general rule that, because a shareholder's derivative suit seeks to vindicate a wrong done to the corporation through enforcement of a corporate cause of action, any recovery obtained is for the benefit of the injured corporation. Where, however, the plaintiff sues in an individual capacity to recover damages resulting in harm, not to the corporation, but to individual shareholders, the suit is personal, not derivative, and it is appropriate for damages to be awarded directly to those shareholders."

*Glenn v. Hoteltron Sys.*, 74 N.Y.2d 386, 392 (1989). Although the claim for non-payment of wages may be personal to Mohammad Al-Naji, it is not a claim for defalcation while acting in a fiduciary capacity. On the other hand, although the use of corporate resources will give rise to a claim for defalcation while acting in a fiduciary capacity, that claim belongs to the corporation and must ordinarily be asserted derivatively on behalf of all of the corporation's shareholders and creditors. Notwithstanding this dilemma, the special circumstances of this case will allow Mohammad Al-Naji to recover a nondischargeable claim in the amount of $20,000.

Section 720 of the New York Business Corporation Law provides in relevant part as follows:

> (a) An action may be brought against one or more directors or officers of a corporation to procure a judgment . . . to compel the defendant to account for his official conduct in the following cases:
>     (A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.
>     (B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties. . . .
> (b) An action may be brought for the relief provided in this section . . . by a corporation, or a receiver, trustee in bankruptcy, officer, director or judgment creditor thereof . . . ."

As an officer and director of United States Wholesale Sign, Co., Inc., Tarek Al-Naji used $20,000 of corporate assets to purchase equipment in his wife's name.  Pursuant to subdivision (a) of Business Corporation Law §720, Tarek Al-Naji may be compelled to account for this defalcation.  Meanwhile, subdivision (b) of this statute allows Mohammad Al-Naji, as a judgment creditor of the corporation, to commence an action of this type.  Generally, any such action will be of a derivative nature.  *Davis v. Wilson*, 150 A.D. 704 (1st Dept. 1912).  When, however, "there is no other judgment creditor and no objection was taken that the rights of other creditors were involved, a direct recovery in favor of the plaintiff might be sustained."  *Shaw v. Ansaldo Co., Inc.*, 178 A.D. 589, 601 (1st Dept. 1917).  *Accord, Huron Milling Co. v. Hedges*, 257 F.2d 258, 263 (2nd Cir. 1958).

Mohammad Al-Naji is not the only creditor of United States Wholesale Sign Co., Inc.  He is, however, the only corporate creditor to challenge the dischargeability of his claim against Tarek Al-Naji.  Moreover, the time to challenge dischargeability has long expired.  Consequently, the order of discharge will operate to discharge all other scheduled creditors, whether with claims that are personal or derivative from a corporation.  Because the rights of other creditors are no longer at issue, Mohammad Al-Naji may obtain a direct recovery of damages that resulted from the defalcation by Tarek Al-Naji while acting in the fiduciary role of corporate officer or director.  Although Mohammad Al-Naji holds a state court judgment for a greater sum, his claim is here nondischargeable only for the lesser amount of damages resulting from the debtor's defalcation.

The court acknowledges the possibility that the debtor may have elected not to schedule certain creditors of the corporation and that any such unscheduled claims may be nondischargeable under 11 U.S.C. §523(a)(3).  That, however, will not affect the outcome of this case.  Section 521(a)(1)(A) of the Bankruptcy Code imposes upon a debtor the duty to file "a list of creditors."  For this purpose, "creditor" is defined to include any "entity that has a claim against the debtor that arose at the time of or before

the order for relief concerning the debtor." 11 U.S.C. §101(10). "Claim" is then defined to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A). Due to the breadth of these definitions, schedules will often list claims against any closely held corporation for which the debtor is an officer or director. Any exclusion from the list of creditors would be an omission by the debtor and not one for which the plaintiff herein should suffer adverse consequences.

Pursuant to 11 U.S.C. § 523(a)(4) and for all of the reasons stated herein, the court finds that the obligation of Tarek Al-Naji to Mohammad Al-Naji is nondischargeable to the extent of $20,000. Accordingly, judgment for the plaintiff will enter in this amount, with interest to accrue at the federal rate from the date of the complaint herein. Judgment for the defendant is granted as to all other causes of action, including the demand for denial of discharge under 11 U.S.C. § 727.

So ordered.

Dated:   Buffalo, New York           /s/      CARL L. BUCKI
         October 30, 2014         Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.